## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

DUSTEN A. MAHON,

     Plaintiff,

v.                                  Case No.  5:20-cv-171-TKW/MJF

TIM BROWN, *et al.*,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before this court on Defendants Dr. Kyle Contini and Dr. Samuel E. Ward's motion to dismiss this section 1983 action. (Doc. 16). Plaintiff Dusten A. Mahon filed a response in opposition. (Doc. 19). The District Court referred this case to the undersigned to make recommendations regarding dispositive matters. Because Mahon's claims are barred by the doctrine of issue preclusion and because Mahon failed to state a claim upon which relief can be granted, the undersigned recommends that Defendants' motion to dismiss be granted.

### I. PROCEDURAL BACKGROUND

This civil action is Mahon's second attempt to litigate his claims. On July 12, 2017, Mahon commenced a *pro se* section 1983 action while he was incarcerated. *See Mahon v. Moore*, No. 5:17-cv-181-TKW/EMT (N.D. Fla. July 12, 2017)

("*Mahon I*").[1] After his release, Mahon retained counsel. Attorney Craig Justin Cannon filed a notice of appearance on behalf of Mahon. (ECF No. 53).

On September 18, 2019, Mahon's counsel filed a motion for leave to file a fourth-amended complaint and a proposed fourth-amended complaint. (ECF Nos. 55, 56). Chief Magistrate Judge Elizabeth M. Timothy granted the motion. (ECF No. 57). Mahon's fourth amended complaint named three Defendants: (1) Mike Moore, administrator of the Holmes County Jail ("the Jail"); (2) Mike Raley, former administrator of the Jail; and (3) Zachary Neitsch, a former correctional officer at the Jail.

As relevant here, Mahon brought a claim of deliberate indifference to a serious medical need against Moore and Raley. Mahon alleged that Raley was deliberately indifferent to Mahon's medical needs when on June 20, 2016, Jail staff released Mahon on his own recognizance to seek medical attention. Mahon alleged that

---

[1] The undersigned takes judicial notice of the documents filed in *Mahon I*. Under Federal Rule of Evidence 201(b), a court may "take judicial notice of facts that are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Bryant v. Avado Brands, Inc*., 187 F.3d 1271, 1278 (11th Cir. 1999). Mahon should have received copies of these documents insofar as he was the Plaintiff in *Mahon I*. Regardless, documents filed in *Mahon I* can be obtained from the clerk of the court. Documents filed in *Mahon I* are cited as "ECF No. ___." Documents filed in the present case are cited as "Doc. ___."

Moore was deliberately indifferent because of an alleged lack of medical treatment for Mahon's left eye and face from January of 2017 through October 26, 2017.

After conducting extensive discovery, Raley and Moore filed a motion for summary judgment. (ECF No. 71). Mahon filed a response in opposition to the motion for summary judgment. (ECF No. 79). Mahon also filed a motion for leave to amend his complaint and a proposed fifth amended complaint. (ECF Nos. 77, 78). This proposed fifth amended complaint sought to add a claim of deliberate indifference against Dr. Contini and Dr. Ward, who are Defendants in the instant action. (ECF No. 78).

On June 1, 2020, Judge Timothy recommended that District Court Judge T. Kent Wetherell grant Raley and Moores' motion for summary judgment and deny Mahon's motion to amend his complaint. Judge Timothy dedicated six pages of her report and recommendation ("R&R") to Mahon's motion to amend the complaint. Judge Timothy found that amending Mahon's complaint to add a claim of deliberate indifference against Dr. Contini and Dr. Ward would be futile.[2] Specifically, as to Dr. Contini, Judge Timothy stated:

---

[2] Leave to amend a complaint is considered to be futile when the proposed amended complaint would be dismissed or be immediately subject to summary judgment for the defendant. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (citing *Hall v. United Ins. Co. of Am.,* 367 F.3d 1255, 1263 (11th Cir. 2004)).

Mahon also seeks to add Dr. Contini and Sheriff Brown as Defendants, based upon the fact that Mahon was released instead of being provided additional medical treatment after the assault by Everett.

For the reasons discussed *supra* in Section IV, neither Administrator Raley nor Sheriff Brown nor Dr. Contini created Mahon's need for medical treatment; instead, the need was created entirely by a spontaneous, unanticipated attack by Inmate Everett. Further, as Mahon concedes, the decision to release Mahon was made by a judge, not Raley, Sheriff Brown, or Dr. Contini. . . . Moreover, Mahon had as much chance of obtaining additional treatment after his release from the Jail as he did in Jail, as demonstrated by the medical evidence demonstrating that he sought and received treatment at the GCMC without any difficulty. Mahon's adding a claim of deliberate indifference as to Administrator Raley, Sheriff Brown, or Dr. Contini would be futile.

(ECF No. 85 at 50-51). Judge Timothy, therefore, recommended denying Mahon's

motion for leave to amend his fourth amended complaint as to Dr. Contini.

Similarly, as to Dr. Ward, Judge Timothy wrote:

Mahon seeks to add a claim of deliberate indifference against Dr. Ward based upon his alleged refusal to allow Mahon to receive treatment from outside medical providers for his left eye and face from January of 2017 to October 26, 2017. Mahon alleges he would not be blind in his left eye and suffer from severe migraines if Dr. Ward had provided treatment for his left eye and face.

Again, as previously discussed, there is no genuine dispute that on February 2, 2017, when Dr. Ward was the Jail's contract physician, Mahon was examined by a specialist, Dr. Robinson at the Mullis Eye Institute. Dr. Robinson noted Mahon's visual field of his right eye was within normal limits with "many false positives." With respect to Mahon's left eye, Dr. Robinson noted Mahon's repaired malar and maxillary fracture. Dr. Robinson diagnosed "classify migraine headache" and a visual defect/disturbance with Mahon's left eye but noted that his eye exam was within normal limits. Dr. Robinson suspected malingering but recommended a consultation with a

neurologist. Dr. Robinson also prescribed eyeglasses. Considering Robinson's findings that Mahon's eye exam was within normal limits with respect to  both eyes, and Robinson's suspicion that Mahon was malingering, Dr. Ward's failure to refer Mahon to a neurologist was not a case of deliberate indifference.

In March, Mahon's wife notified the Jail (on a Saturday) that she had scheduled an appointment for Mahon with a plastic surgeon two days later. But there is no evidence that Dr. Ward subjectively knew about either the appointment or Mahon's need for medical treatment at that time.

On April 23, 2017, Mahon submitted a sick call request, and Dr. Ward saw him the next day. Dr. Ward noted Mahon's complaint of vertigo, pain in his left eye, toothache, esophageal reflux, and Mahon's stated need for surgery. Dr. Ward prescribed medication for the vertigo (Meclizine, 25 mg every 8 hours for 2 weeks) and ordered that Mahon be provided milk with his medications (to help with the reflux). Dr. Ward's treatment plan also included "Records eval. For sx [surgery] if needed" and "eye referral if needed." And Mahon continued to receive treatment for pain (800 mg of ibuprofen twice daily) and GERD (Ranitidine). The fact that no additional steps were taken to facilitate an evaluation for eye treatment or surgery does not plausibly suggest deliberate indifference, as opposed to mere negligence, on Dr. Ward's part. As previously explained, deliberate indifference requires the defendant to have a subjective state of mind "more blameworthy than negligence."

In May and June 2017, Mahon complained to Administrator Moore that he needed medical treatment, and Moore repeatedly told Mahon to request treatment via sick call, but Mahon did not do so. In July, Mahon requested Oragel and salt for jaw pain, and a nurse provided it. In August, a nurse evaluated and monitored Mahon's complaint with respect to his left eye. Thereafter, there is no evidence that Mahon requested medical treatment for his eye or face/mouth.

These facts fail to plausibly suggest that Dr. Ward was deliberately indifferent to Mahon's serious medical needs.

(ECF No. 85 at 52-54). Because Judge Timothy determined that Mahon's allegations

did not plausibly state a claim for relief, she recommended that the district court deny Mahon's motion to amend his complaint as to Dr. Ward. (*Id.*).

On June 15, 2020, Mahon filed objections to Judge Timothy's R&R. (ECF No. 86). Mahon argued that amendment of his fourth amended complaint would not be futile. Judge Wetherell adopted Judge Timothy's R&R over Mahon's objections. Judge Wetherell incorporated Judge Timothy's R&R into his decision and also held that: (1) Mahon failed to provide an adequate justification for his delay in moving to amend his complaint yet again; and (2) the new claims that Mahon wanted to assert in his proposed fifth amended complaint were "inadequate as a matter of law." (ECF No. 88 at 2). Judge Wetherell therefore, entered judgment against Mahon and closed the case.

Mahon did not appeal Judge Wetherell's decision. Instead, four days after Judge Wetherell entered his order in *Mahon I*, Mahon filed the instant lawsuit (*Mahon II*), in which he asserts the same claims against Dr. Ward and Dr. Contini that Judge Wetherell previously held in *Mahon I* were "inadequate as a matter of law." (ECF No. 85 at 50-54; ECF No. 88 at 2).

## II. FACTUAL BACKGROUND

**A.    <u>Mahon's First Term of Detention in the Jail</u>**

On June 10, 2016, Holmes County arrested Mahon and detained him pre-trial at the Jail.[3] (Doc. 1 at ¶ 15). The Jail is operated and controlled by the Holmes County Sheriff. Defendant Raley was the administrator of the Jail in June 2016, and Defendant Brown was the Holmes County Sheriff.

According to Jail policy, if an inmate desired medical attention, he could submit a sick-call request to the medical department or declare a medical emergency. At that time (June of 2016), the Jail employed a nurse with the surname "Walsingham," who was present at the Jail eight hours per day, five days per week, and otherwise was "on-call." (Doc. 1 at ¶ 19). The Jail also contracted with a private physician, Dr. Contini, who visited the Jail once per week and was available on an "on-call" basis to respond to emergencies or matters presented to him by the nurse. (*Id.* at ¶ 20).

According to the Jail's usual practice, if an emergency arose when the nurse or doctor was not on the premises, the staff called emergency medical services and

---

[3] Although the undersigned recites the facts as stated by Mahon in *Mahon II*, these facts are substantially the same material facts that Mahon alleged in *Mahon I*. (ECF No. 88 at 21-26, 33-46).

followed its advice. The Jail administrator did not review inmate requests for medical attention. (*Id.* at ¶¶ 21-22).

If an inmate received medical treatment from an outside provider, and the outside provider recommended additional treatment, the Jail's medical staff would "brief" the Jail administrator on the nature and seriousness of the inmate's medical condition and the estimated cost of the additional treatment. The Jail administrator then would provide this information, as well as the nature of the inmate's criminal charges, to the Sheriff. The Sheriff then would decide whether to ask a judge if an inmate could be released.

If the Sheriff decided not to request an inmate' release, the Jail's nurse would process the paperwork to facilitate treatment by an outside provider and would notify the jail administrator of the outside appointment. The Jail administrator then would arrange the inmate's transportation to the medical provider. The Jail's medical staff made the decisions as to whether an inmate received medical treatment from either within the Jail or an outside medical provider.

### 1.    *Mahon's First Injury and Treatment by the Jail*

On June 20, 2016, at 1:00 p.m., Jail inmate James Curtis Everett struck Mahon in the head and face. (Doc. 1 at ¶ 28). Nurse Walsingham assessed Mahon's injuries. Mahon indicated that he had fractured the floor of his left eye approximately two years prior and that he had "10 Pounding-Stabbing" pain. At 1:25 p.m., Nurse

Walsingham notified Dr. Contini of Mahon's condition, and Dr. Contini ordered that Mahon undergo a CT scan at Doctors Memorial Hospital in Bonifay, Florida.

Jail security staff and Nurse Walsingham transported Mahon to Doctors Memorial Hospital, where medical personnel performed a CT scan of his head and face. Hospital personnel reviewed the CT images at 2:27 p.m. and determined that there was no acute intracranial abnormality. The CT images, however, indicated that Mahon had suffered multiple fractures of the left orbit and maxilla. Approximately 30 minutes later, at 3:09 p.m. the Hospital staff informed Nurse Walsingham about the CT imaging.

At 3:12 p.m., Nurse Walsingham notified Dr. Contini of the CT images. At 3:13 p.m., Nurse Walsingham notified Raley that Mahon required additional medical treatment. Raley "briefed" Sheriff Brown, and Sheriff Brown directed Raley to contact a Holmes County Judge and recommend Mahon's release from custody. Judge Powell authorized Mahon's release.

At 3:55 p.m. County personnel released Mahon with a notice to appear in court. Nurse Walsingham advised Mahon to go to the Gulf Coast Medical Center as soon as possible. She provided Mahon with a CD that contained his CT images.

### 2.    *Mahon's Treatment at the Gulf Coast Medical Center*

Mahon's wife picked up Mahon and, at approximately 6:54 p.m., took him to the Gulf Coast Medical Center ("GCMC") for treatment. At the GCMC, medical

staff conducted a CT scan of Mahon's head and cervical spine. The results showed: "(1) no change from his CT scan earlier that day; (2) no signs of a developing subdural hematoma; (3) normal brain and soft tissues with no mass, no midline shift, and no skull fracture; (4) fractures to his left eye and the left side of his face; (5) gas in the retro orbital regions; and (6) soft tissues of the left eye." (Doc. 1 at ¶ 50). The CT scan of Mahon's cervical spine was unremarkable. (*Id.* at ¶ 51).

Medical personnel at GCMC administered an antibiotic, electrolytes, an anti-inflammatory agent, a sedative, and an analgesic. Mahon was discharged around 11:00 p.m. with a diagnosis of maxillary fracture, medial orbital wall fracture, orbital floor (blow-out) closed fracture, possible orbital muscle entrapment, swelling of the left side of face, and traumatic ecchymosis of the face. Mahon was instructed to see Dr. Beggs, a maxillofacial ear, nose, and throat surgeon at 8:30 am the following morning. The GCMC personnel provided Mahon with additional pain medication, an antibiotic, and an antihistamine.

The next day, June 21, 2016, Dr. Beggs examined Mahon. Dr. Beggs noted that Mahon had a black eye and orbital "step off." He also noted that Mahon's extra ocular muscles appeared intact, his primary gaze was aligned, and his vision was intact. Dr. Beggs diagnosed Mahon with an open, complex fracture of malar and maxillary bones. On June 24, 2016, Dr. Beggs performed surgery on Mahon. At a

follow-up appointment, Dr. Beggs noted that Mahon was doing well and healing nicely.

**B.**   **Mahon's Second Term of Detention in the Jail**

On December 7, 2016, Holmes County arrested Mahon for violating his community control supervision and the Sheriff detained Mahon in the Jail. During booking, Mahon signed a form acknowledging that Jail personnel instructed that if he had a medical problem, he must describe it in detail on a sick-call request form and give it to the nurse. He also completed a medical assessment form in which he noted that he suffered from a "broke face," "optical," and "nerve in eye." He also listed "lower back pain, ankles & knees, left side face pain and going blind, tooth (illegible)." As for medications, he noted that he has been prescribed Percocet, Adderall, and Restasis.

**1.**   *Change in Leadership at the Jail*

On January 1, 2017, Moore became the administrator of the Jail, and Tate became the Sheriff of Holmes County. Despite the change in leadership, the Jail retained its policy that all appointments with outside medical providers first be approved and scheduled by Jail medical staff (the contract doctor and the Jail's nurse) and that security staff would coordinate transportation of the inmate. If an outside medical provider recommended treatment for an inmate, the Jail's nurse would advise the contract physician, and the physician then would assess the

necessity of the treatment. If the Jail's medical staff determined that outside medical treatment was necessary, the medical department would coordinate the appointment with the outside provider and coordinate with Moore regarding security and transportation.

### 2.    *Mahon's January 2017 Injury to his Face*

On January 10, 2017, Mahon fell and hit the left side of his face. The Jail transported Mahon to the emergency room at Doctors Memorial Hospital. A technician produced x-ray images of Mahon's face, which indicated no apparent acute injury. Dr. Bailey diagnosed Mahon with a contusion to his left cheek with no apparent new fractures. The Hospital then discharged Mahon.

### 3.    *Treatment by the Mullis Eye Institute*

On January 12, 2018, the Jail transported Mahon to the Mullis Eye Institute for an examination. Likewise, on February 2, 2017, the Jail transported Mahon to the Mullis Eye Institute for an appointment with Dr. Robinson.

Dr. Robinson noted that the visual field of Mahon's right eye was within normal limits with "many false positives." With respect to Mahon's left eye, Dr. Robinson noted Mahon's repaired malar and maxillary fracture. Dr. Robinson diagnosed "classic migraine headache" and a visual defect/disturbance with Mahon's left eye but noted that his eye exam was within normal limits. Dr. Robinson noted that he suspected that Mahon was malingering, but Dr. Robinson

recommended a consultation with a neurologist. Dr. Robinson also prescribed eyeglasses. There is no record indicating that Mahon received the eyeglasses or obtained a consultation with a neurologist.

### 4.    *Mahon's Complaints About Wires in his Face*

In late January 2017, Mahon complained to an unnamed Jail nurse that wires from the metal plates in his face were becoming exposed. He explained that the wires were exposed on the inside of his mouth and were not outwardly visible. Mahon complained to Moore of pain and swelling in his face, but Moore responded that Mahon would not receive additional pain medication beyond the 800 mg of ibuprofen that Mahon received twice daily. In January and February of 2017, the Jail provided Mahon with Gabapentin and Restasis eye drops. In February, the Jail also provided Mahon medication for migraines (Imitrex).

### 5.    *Mahon's Requests for Additional Medical Treatment*

On February 18, 2017, Mahon submitted a medical request asking if he could see a dentist, plastic surgeon, and "The Neuro, Brain & Spine Center" regarding his facial injuries. Mahon complained that his teeth were "killing" him and that his "eyeball is in great pain." From February 20 through 22, a nurse administered medicine to Mahon and noted that he was resting on the floor of the cell and took the medication without any difficulty.

On February 23, 2017, an officer offered Mahon medication, but Mahon refused. An hour later, a nurse returned to Mahon's cell and offered the medication. Mahon complained he was "hurting bad," and the nurse explained that refusing his medication would only cause his pain to worsen. Mahon still refused to take it.

### 6.   *Mahon's Appointment with Dr. Beggs*

In March 2017, Mahon's wife scheduled an appointment for him with Dr. Beggs, the plastic surgeon who performed Mahon's surgery in June of 2016. Although Mahon's complaint does not specify the date of this appointment, it appears that this appointment was scheduled for some time in March 2017. (ECF No. 85 at 39). The appointment was for "Monday at 10:35."

Mahon alleges that Moore was aware that Mrs. Mahon had scheduled appointments for Mahon with outside medical providers. Moore advised both Mahon and his wife that they must coordinate appointments with outside medical providers through the Jail's medical department. Mahon alleges that there are no records showing that Moore or the Jail's medical department scheduled or attempted to schedule an appointment with Dr. Beggs.  Presumably, the Jail never transported Mahon to his scheduled appointment with Dr. Beggs.

### 7.   *Medical Requests Regarding Mahon's Teeth and Left Eye*

On April 23, 2017, Mahon submitted a medical request stating that the teeth in his upper left jaw needed to be removed and that his left eye needed surgery. Dr.

Ward saw Mahon the next day. Dr. Ward assessed Mahon with a toothache, pain in his left eye, vertigo, and gastroesophageal reflux disease ("GERD"). Dr. Ward noted that Mahon "wants to have sx [surgery] on face." Dr. Ward prescribed medication for the vertigo and ordered that Mahon be provided milk with his medications to help ameliorate the acid reflux. The treatment plan also indicated that Dr. Ward would evaluate Mahon's records to see if surgery and an eye referral were necessary. Mahon alleges that there is no record that Dr. Ward evaluated Mahon for surgery or made an eye referral.

### 8.    *Medical Requests Regarding Mahon's Facial Pain*

On May 11, 2017, Mahon submitted an inmate request to Moore in which he complained "[M]y face is killing me." Mahon requested surgery and pain medication. Moore instructed Mahon to sign up for sick call.

On May 12, 2017, Mahon sent another request to Moore for surgery and treatment for his face. Moore again instructed Mahon to sign up for sick call.

On June 8, 2017, Mahon submitted an inmate request complaining that he was being denied an appointment with his plastic surgeon. Moore responded that Mahon failed to indicate to whom he was directing this request and failed to attach all of the necessary copies of the request.

On July 26, 2017, Nurse Howell examined Mahon for his complaint of upper jaw pain from a wire. Mahon requested Oragel (oral pain relief) and salt. Nurse Howell provided this treatment.

### 9.    *Mahon's Complaints Regarding his Vision*

In July 2017, Howell examined Mahon because Mahon complained of difficulty seeing out of his left eye. Howell observed that Mahon's left eye was slightly red and swollen. She conducted a vision screening and noted that Mahon could not read the 20/100 line of the eye chart, stating it was blurry. Howell stated that she would talk to Moore about the issue, but there is allegedly no record that Howell spoke with Moore.

From August 5 through August 15, 2017, Howell repeatedly saw Mahon for his eye. On August 5, 2017, Howell noted that Mahon squinted a lot even though his eye was clear and exhibited no redness or swelling. Nurse Howell proposed a treatment plan that included monitoring Mahon's condition.

On August 8, 2017, Mahon asked if a doctor appointment had been scheduled, Howell responded that she would continue to monitor Mahon's condition and speak with Moore. On August 9, 2017, Mahon's eye was clear with no swelling.[4] On

---

[4] In response to the summary judgment motion in *Mahon I*, Mahon provided a handwritten report authored by Moore. (ECF No. 79-6 at 47). According to this report, on August 10, 2017, Moore informed Mahon that he was being placed in "lock down" because an investigation revealed that Mahon was intentionally harming himself by putting bleach in his eyes, and he continued to complain of

August 14, 2017, Howell noted that Mahon's eye was clear with no swelling, but that Mahon still squinted.

On August 15, 2017, Howell conducted another eye exam. Mahon stated he could not read the top line of the eye chart (20/100) at all and stated, "I get dizzy when I look out of it." On October 26, 2017, Mahon was discharged from the Jail to the custody of the Florida Department of Corrections.

## II. STANDARD

Motions to dismiss for failure to state a claim are governed by the Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). In addressing such motions, courts accept all well-pleaded factual allegations of the complaint as true and evaluate all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

headaches while he stockpiled and sold the prescription ibuprofen he was receiving. In his deposition testimony, Mahon admitted that he stored six 800 mg ibuprofen pills in a hot cocoa mix pouch instead of consuming them when the nurse administered them to him. (Mahon Dep. 124:21–125:2, 125:11–16, 126:2–4, ECF No. 79-1).

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility that the defendant acted unlawfully is insufficient.

### III. DISCUSSION

The undersigned recommends dismissal of this action based on issue preclusion and because Plaintiff's allegations are insufficient to state a claim upon which relief can be granted.

### A.   <u>Issue Preclusion</u>

The doctrine of issue preclusion—sometimes referred to as "collateral estoppel"[5]—"bars relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *McKinnon v. Blue Cross & Blue Shield of Ala.*, 935 F.2d 1187, 1192 (11th Cir. 1991); *accord Sellers*, 968 F.3d at 1272 (citing *Taylor*, 553 U.S. at 892). Issue preclusion "like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979) (citing *Blonder-Tongue Lab'ys., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 328-329 (1971)).

---

[5] "The terms 'issue preclusion' and 'collateral estoppel' have the same meaning. The use of the term 'issue preclusion,' however, has become prevalent in recent caselaw as it creates less confusion regarding its application." *Sellers v. Nationwide Mutual Fire Ins.*, 968 F.3d 1267, 1272 n.3 (11th Cir. 2020) (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 n.5 (2008)).

"[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). There are four prerequisites to the application of issue preclusion:

1.   "the issue at stake is identical to the one involved in the prior proceeding";

2.   "the issue was actually litigated in the prior proceeding";

3.   "the determination of the issue in the prior litigation must have been 'a critical and necessary part' of the judgment in the first action"; and

4.   "the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding."

*Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000) (quoting *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998)); *Greenblatt v. Drexel*, 763 F.2d 1352, 1360 (11th Cir. 1985). Although the undersigned addresses each prerequisite below, Mahon argues only that Defendants have failed to demonstrate that the fourth prerequisite is satisfied.[6] (Doc. 19).

---

[6] The undersigned applies federal preclusion principles because the matter before the court "is a federal question previously decided by a federal court." *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps*, 327 F.3d 1309, 1316 (11th Cir. 2003).

1.    *The Relevant Issues at Stake in Mahon I and II are Identical*

As to the first prerequisite, an issue is considered "identical" to an issue litigated in a prior case if it was litigated in the prior case expressly or impliedly. *Powrzanas v. Jones Util. & Contracting Co.*, 822 F. App'x 926, 928 (11th Cir. 2020) (citing *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549-50 n.3 (11th Cir. 1990)). Furthermore, the "two cases must involve identical events or transactions; it is not enough for events or transactions to be similar in nature and close in time." *Id.* (citing *In re McWhorter*, 887 F.2d 1564, 1567-68 (11th Cir. 1989)).

### (a).    Deliberate Indifference Claim Against Dr. Contini

In *Mahon I*, Mahon alleged that Raley acted with deliberate indifference on June 20, 2016, when he obeyed Judge Powell's order and released Mahon from the Jail while Mahon was in need of medical care. In his proposed fifth amended complaint in *Mahon I*, Mahon attempted to assert that Dr. Contini also was deliberately indifferent on June 20, 2016, because he did not provide medical care to Mahon after Judge Powell ordered Mahon release from the Jail.

In *Mahon II*, Mahon has raised this identical claim against Dr. Contini. That is, Mahon again alleges that Dr. Contini was deliberately indifferent to Mahon's serious medical needs when Judge Powell ordered Mahon released from the Jail and he was, therefore, required to seek medical attention on his own. The facts underlying both the claims are the same as they relate to the transactions and

occurrences of June 20, 2016. Therefore, as to Dr. Contini this first prerequisite of issue preclusion exists.

### (b).   Deliberate Indifference Claim Against Dr. Ward

In *Mahon I*, Mahon alleged that Moore acted with deliberate indifference by ignoring Mahon's requests for medical treatment from January 2017 through October 2017. Mahon requested leave to amend his complaint to add claims against Dr. Ward for deliberate indifference to a serious medical need. Specifically, he sought to add claims that Dr. Ward was deliberately indifferent insofar as Dr. Ward allegedly "ignor[ed] Plaintiff's repeated request for medical treatment for his left eye and face from January 2017 until 10/26/2017." (ECF No. 81 at ¶ 91).

In *Mahon II*, Mahon alleges that Dr. Ward was deliberately indifferent for the same reasons. That is, Mahon alleges that Dr. Ward was deliberately indifferent because he "ignor[ed] Plaintiff's repeated requests for medical treatment for his left eye and face from 1/1/2017 until 10/26/2017"; "fail[ed] to provide and/or refus[ed] to allow Plaintiff to receive medical treatment"; and "fail[ed] to direct Administrator Moore to arrange security and transportation for outside treatment." (Doc. 1 at ). Because these claims are predicated on the same underlying facts and transactions as *Mahon I*, the issues are the same. Therefore, as to Dr. Ward, this first prerequisite of issue preclusion exists.

2.    *The Relevant Issues were Actually Litigated in Mahon I*

For issue preclusion, in the prior proceedings, the relevant issue must have been litigated, submitted for determination, and actually determined by the prior court. *Woodson v. Eleventh Jud. Cir. in & for Miami Dade Cnty., Fla.*, 791 F. App'x 116, 119-20 (11th Cir. 2019); *Christo*, 223 F.3d at 1339; *Pleming*, 142 F.3d at 1359. An issue need not result in a trial to meet the "actually litigated" prerequisite. *See In re Keaty*, 397 F.3d 264, 271 (5th Cir. 2005); *Pleming*, 142 F.3d at 1359; *Hirschfeld v. Spanakos*, 104 F.3d 16, 19 (2d Cir. 1997); *Truck Ins. Exch. v. Ashland Oil Inc.*, 951 F.2d 787, 792 (7th Cir. 1992) *Jacques v. Local 1418*, 404 F.2d 703, 705-06 (5th Cir. 1968) (per curiam). Indeed, satisfaction of the "actually litigated" requirement "does not require introduction of evidence or a fact hearing. Many forms of disposition on the pleadings support issue preclusion even though no evidence is offered." 18 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 4419, at 533-34 (3d ed. 2016).

(a).    <u>**Mahon's Claim Against Dr. Contini Was Actually Litigated**</u>

In *Mahon I*, the issue of whether the Jail staff was deliberately indifferent to his medical needs on June 20, 2016, was actually litigated. Mahon asserted this claim in *Mahon I* in his fourth amended complaint and his proposed fifth amended complaint. In her R&R, Judge Timothy addressed this claim, first as to Raley:

> Viewing the facts in the light most favorable to Mahon, no reasonable juror could conclude that former Administrator Raley was

deliberately indifferent to Mahon's medical needs on June 20, 2016. Mahon has not demonstrated a genuine factual dispute that Raley learned of Mahon's need for additional treatment at approximately 3:13 p.m.; that he immediately discussed the matter with the Sheriff; that he followed the Sheriff's directive to contact a judge; that a judge authorized Mahon's release; and that Mahon was released from the Jail at 3:55 p.m. First, there is no genuine factual dispute that Judge Powell, not Raley, ordered Mahon's release. Further, there is no evidence that the one-hour (approximately) delay, from the time Raley learned of Mahon's need for additional treatment to the time Mahon was released, was due to deliberate indifference on Raley's part. And there is no genuine factual dispute that the additional three-hour delay, from the time Mahon was released from the Jail to the time he was seen in the emergency room at the GCMC, was not attributable to Raley.

(ECF No. 85 at 28-29).

As to Dr. Contini, Judge Timothy incorporated her analysis regarding Raley into her recommendation that Mahon's proposed fifth amended complaint would be futile insofar as it sought to assert a deliberate indifference claim against Dr. Contini for failing to treat Mahon after he had been released from the Jail or for allowing him to be released. As Judge Timothy noted, such a claim would be subject to dismissal or summary judgment for Dr. Contini. (*Id.* at 50-51); *see Cockrell*, 510 F.3d at 1310. Judge Timothy specifically noted that Mahon did not put forth evidence sufficient to create a genuine dispute as to who made the decision to release Mahon from the Jail. Indeed, Judge Timothy noted that Mahon conceded that Judge Powell made the decision to release Mahon from Jail on June 20, 2016. (*Id.*). She noted that Mahon had not put forth any evidence that Dr. Contini was responsible for Mahon's injuries. (*Id.* at 51).

Accordingly, the issue of whether Mahon could state a claim against Dr. Contini was submitted to the court in *Mahon I* for determination and was actually litigated. *Dauven v. U.S. Bancorp*, 390 F. Supp. 3d 1262, 1281 (D. Or. 2019) (holding that an issue was "actually litigated" when it was fully briefed by the parties and was essential to the decision to deny leave to amend the complaint). Thus, as to Dr. Contini, this second requirement of issue preclusion exists.

### (b).   Mahon's Claims Against Dr. Ward Were Actually Litigated

In *Mahon I*, Mahon also raised his claims against Dr. Ward for deliberate indifference to a serious medical need and the viability of these claims were decided—against Mahon—by Judge Wetherell in *Mahon I*. In her R&R, Judge Timothy addressed these claims, and Judge Wetherell adopted Judge Timothy's R&R and incorporated it by reference into his decision. (ECF No. 88 at 2).

Judge Timothy noted that Mahon's proposed fifth amended complaint failed to state a claim against Dr. Ward. As to Mahon's claim that Dr. Ward did not order a consultation with a neurologist in February 2017, Judge Timothy observed that "[c]onsidering Robinson's findings that Mahon's eye exam was within normal limits with respect to both eyes, and Robinson's suspicion that Mahon was malingering, Dr. Ward's failure to refer Mahon to a neurologist was not a case of deliberate indifference." (ECF No. 85 at 52-54).

As to the other claims of deliberate indifference against Dr. Ward, Judge Timothy explained that Mahon did not allege that "Dr. Ward subjectively knew about either the appointment or Mahon's need for medical treatment" when Mrs. Mahon scheduled an outside appointment in March 2017. (*Id.*). Mahon also failed to allege that Mahon informed Dr. Ward in May and June 2017 of his need for medical care. (*Id.*).

Similarly, Judge Timothy observed that Dr. Ward's failure to facilitate eye treatment or surgery for Mahon "does not plausibly suggest deliberate indifference, as opposed to mere negligence, on Dr. Ward's part. As previously discussed, deliberate indifference requires a defendant to have a subjective state of mind 'more blameworthy than negligence.'" (*Id.*). Judge Timothy concluded that Mahon's proposed fifth amended complaint was subject to dismissal because it failed to state a claim of deliberate indifference to a serious medical need. Judge Wetherell adopted Judge Timothy's R&R, incorporated it in his decision, and denied Mahon's motion to amend his complaint. Thus, this issue was actually litigated in *Mahon I. See Dauven*, 390 F. Supp. 3d at 1281.

### 3.    *The Relevant Questions Were a Necessary Part of the Judgment*

With respect to the third prerequisite, "collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit." *Brown v. Felsen*, 442 U.S. 127, 139 n.10 (1979) (citing *Montana v. United States*, 440 U.S. 147, 153

(1979); *Parklane Hosiery Co.*, 439 U.S. at 326 n.56). An issue is a necessary part of the judgment if "the disposition in the first suit was the basis for the holding with respect to the issue and not 'mere dictum.'" *McLaughlin v. Bradlee*, 803 F.2d 1197, 1204 (D.C. Cir. 1986) (citing *Safir v. Dole,* 718 F.2d 475, 482 (D.C. Cir. 1983); *Ass'n of Bituminous Contractors, Inc. v. Andrus,* 581 F.2d 853, 860 (D.C. Cir. 1978)).

### (a).   Dr. Contini

With respect to Dr. Contini, the third prerequisite exists. The issues relating to Mahon attempting to state a claim against Dr. Contini which Judge Timothy addressed in *Mahon I* were neither incidental to her R&R nor mere *dicta*. Rather, a key part of her R&R was her observation that Mahon failed to provide sufficient evidence to establish that Raley and Dr. Contini were deliberately indifferent on June 20, 2016. Thus, the proposed amended claims were futile. This, likewise, was the basis of Judge Wetherell's determination Mahon's claim against Dr. Contini was "inadequate as a matter of law." (ECF No. 85 at 50-54; ECF No. 88 at 2).

### (b).   Dr. Ward

With respect to Dr. Ward, the third prerequisite also exists. Judge Timothy concluded that, because Mahon's proposed fifth amended complaint did not state a claim of deliberate indifference to a serious medical need—and thus it would be subject to dismissal and allowing such an amended would be futile—she

recommended that the District Court deny Mahon's motion to amend his complaint to add claims against Dr. Ward. (ECF No. 85). Judge Wetherell adopted Judge Timothy's R&R and concluded that Mahon's proposed claims against Dr. Ward were "inadequate as a matter of law." (ECF No. 88 at 2). Because this was neither incidental nor mere *dicta*, the third prerequisite also exists as to Mahon's claims against Dr. Ward for deliberate indifference to a serious medical need.

### 4.    *Mahon Had a Full and Fair Opportunity to Litigate the Issues*

Mahon argues that, in *Mahon I*, he did not have a full and fair opportunity to litigate the issues relating to his claims against Dr. Contini and Dr. Ward.[7]

Defensive issue preclusion occurs when a plaintiff is "estopped from asserting a claim that the plaintiff had previously litigated and lost against another defendant." *Parklane Hosiery Co.*, 439 U.S. at 329. "Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.'" *Id.* This gives a plaintiff a strong incentive to join all potential defendants in the first action if possible. *Id.* at 329-30. Defensive issue preclusion, therefore, necessarily anticipates that the defendant in the second lawsuit will be

---

[7] The parties argue about Dr. Contini and Dr. Ward's privity with the *Mahon I* Defendants. Unlike res judicata, however, "*the doctrine of collateral estoppel is not limited to identical parties or parties in privity*, as collateral estoppel deals only with issue preclusion." *Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468, 1473 (11th Cir. 1986) (emphasis added).

different from the defendant in the initial lawsuit. In fact, "[u]nlike res judicata, *the doctrine of collateral estoppel is not limited to identical parties or parties in privity*, as collateral estoppel deals only with issue preclusion." *Hart*, 787 F.2d at 1473. Thus, "a defendant who was not a party to the original action may invoke collateral estoppel against the plaintiff." *Id.* (citing *Cotton States Mutual Ins. Co. v. Anderson*, 749 F.2d 663, 666 (11th Cir. 1984); *Charles J. Arndt, Inc. v. City of Birmingham*, 748 F.2d 1486, 1494 n.9 (11th Cir. 1984)); *see Allen*, 449 U.S. at 94-95 (noting that "the requirement of mutuality in applying collateral estoppel" is eliminated).

Nevertheless, "the party *against whom* estoppel is asserted" must have been afforded "a full and fair opportunity to litigate" the relevant issues. *Blonder–Tongue*, 402 U.S. at 329 (emphasis added). This requirement is the most significant safeguard in applying issue preclusion. *Id.* The Supreme Court has discussed factors relevant to determining whether a litigant who is being estopped had a fair and full opportunity to litigate in the first action. These factors include: (1) whether the second action affords procedural opportunities unavailable in the first action that could readily cause a different result; and (2) whether the party being estopped had incentive to litigate the prior action vigorously. *Id.* If the party to be estopped was not a party to the first suit, they generally have not had a "full and fair opportunity to litigate" the claims and issues settled in that suit. *Taylor*, 553 U.S. at 893.

It is undisputed that Mahon was the only plaintiff in both *Mahon I* and *Mahon II*. Thus, he was a party to the earlier action. Additionally, he had every incentive to litigate the prior action vigorously. Furthermore, the *Mahon II* case does not offer Mahon any procedural opportunities that were not available to him in *Mahon I*. In *Mahon I*, Mahon was represented by counsel and conducted extensive discovery relating to these incidents prior to defendants filing a motion for summary judgment. In *Mahon I*, Mahon amended his complaint several times. Thus, he had ample opportunity to amend his complaint and present all his claims, discover relevant evidence, and provide such evidence as necessary to defend against defendants' motion for summary judgment.

Mahon also had the opportunity to object to Judge Timothy's R&R, and he in fact filed objections to her R&R. He also had the opportunity to appeal Judge Wetherell's decision to the United States Court of Appeals for the Eleventh Circuit, even though Mahon elected not to take advantage of that opportunity. Thus, there is no dispute that Mahon had ample *opportunity* to litigate his claims both in objections to Judge Timothy's R&R and in an appeal to the Eleventh Circuit.

Allowing Mahon to pursue his claims against Dr. Contini and Dr. Ward yet again—after Judge Wetherell already found his claims to be insufficient as a matter of law—would necessarily be a misallocation of the court's and the party's resources. *Parklane Hosiery Co.*, 439 U.S. at 328 ("In any lawsuit where a

defendant, because of the mutuality principle, is forced to present a complete defense on the merits to a claim which the plaintiff has fully litigated and lost in a prior action, there is an arguable misallocation of resources."); *id.* ("Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or 'a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.'"). Thus, the fourth and final prerequisite of issue preclusion also exists.

Because each of the four requirements of issue preclusion exists in this case, Mahon's claims against Dr. Contini and Dr. Ward for deliberate indifference to a serious medical need are precluded, and these claims should be dismissed.

## B. <u>Failure to State a Claim Upon Which Relief Can Be Granted</u>

In addition to issue preclusion, Mahon's complaint should be dismissed because he failed to state a claim against Dr. Contini and Dr. Ward for deliberate indifference to a serious medical need.

To state an Eighth-Amendment claim of deliberate indifference to a serious medical need, a plaintiff must allege that:

(1) he had a serious medical need;

(2) the defendant was deliberately indifferent to that need; and

(3) there is a causal connection between the defendant's act or omission and the constitutional deprivation.

*Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009); *Rodriguez v. Sec'y, Dep't of Corr.*, 508 F.3d 611, 625 (11th Cir. 2007); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). This standard includes an objective component—"that the deprivation was serious enough to constitute cruel and unusual punishment"—and a subjective component—deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012); *Taylor*, 221 F.3d at 1257. Thus, courts "considering a prisoner's claim must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)).

### 1.   *Dr. Contini*

Mahon has not sufficiently alleged that Dr. Contini acted with deliberate indifference and that his actions or inactions caused the alleged constitutional violation. Mahon's complaint plainly fails to allege that Dr. Contini acted with deliberate indifference to Mahon's serious medical needs. In fact, Mahon's complaint indicates that Dr. Contini promptly acted to provide medical treatment for Mahon's injuries. For example, within one hour of being informed of Mahon's

injuries, Dr. Contini: (1) ordered a CT scan; (2) sent Mahon to Doctors Memorial Hospital for the CT scan; (3) set in motion the process whereby a CT scan actually was conducted by medical staff at Doctors Memorial Hospital, and the results were reviewed by medical staff at the hospital. (Doc. 1 at ¶¶ 28-35). Mahon simply has not alleged facts which indicate that Dr. Contini was deliberately indifferent to Mahon's medical needs.

To the extent that Mahon argues that Dr. Contini was deliberately indifferent because Mahon was provided only ice for a period of 2.5 hours from when Dr. Contini first learned of Mahon's injuries to when Mahon was released from the Jail,[8] Mahon has not alleged that Dr. Contini had any mental state more blameworthy than simple negligence. Indeed, according to the facts alleged in Mahon's complaint, Nurse Walsingham provided ice and Dr. Contini *immediately* referred and transferred Mahon to the hospital so that he could undergo a CT scan to determine the extent of his injuries. According to Mahon's complaint, Dr. Contini arranged for Mahon to receive prompt medical treatment, but not the method of treatment that Mahon would have preferred insofar as he was not provided pain medication. Furthermore, Mahon does not allege that the delay in providing pain medication exacerbated his medical condition. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th

---

[8] To the extent there was an additional three-hour delay from when Mahon was released and when he sought additional medical treatment, Mahon has not alleged that Dr. Contini was responsible for this additional delay.

Cir. 2007) (noting that courts must consider whether the delay in medical treatment "worsened the medical condition"). As Mahon indicated in his complaint, the results of the CT scan at GCMC showed: (1) no change from his CT scan earlier that day; and (2) no signs of a developing subdural hematoma. (Doc. 1 at 7 ¶ 50). Thus, any delay in additional treatment did not worsen his medical condition.

Finally, as to the claim that Dr. Contini was deliberately indifferent when Judge Powell ordered Mahon released "on his own recognizance to seek medical care on his own," this simply is insufficient to state a claim against Dr. Contini. According to Mahon's allegations Dr. Contini was not even involved in the decision to release Mahon from the Jail. Rather, Walsingham contacted Raley, and Raley contacted Sheriff Brown. Although Sheriff Brown recommended contacting a Holmes County Judge and recommended release of Mahon, ultimately it was Judge Powell who released Mahon from the Jail's custody, not Dr. Contini.[9] The undersigned is well aware that, as a matter of Florida law, judges determine who should be released and detained.

Furthermore, even if Dr. Contini had been involved in Judge Powell's decision to release Mahon, Mahon had an equal opportunity—if not a greater opportunity—to receive medical care outside the facility as he had confined in the

---

[9] In her report and recommendation, Judge Timothy noted: "Mahon concedes, the decision to release Mahon was made by a judge, not Raley, Sheriff Brown, or Dr. Contini."

Jail. This is illustrated by the fact that, a mere three hours after being released, Mahon's wife took Mahon to a hospital where he received treatment. Mahon has not alleged any facts which plausibly suggest that Dr. Contini was responsible for Mahon's three-hour delay in seeking medical treatment that occurred once he was released from the Jail's custody. *Goebert*, 510 F.3d at 1327 ("Causation, of course, can be shown by personal participation in the constitutional violation."). Accordingly, Mahon failed to allege that Dr. Contini caused any constitutional violation. Because Mahon failed to allege against Dr. Contini at least two essential elements of a claim of deliberate indifference to a serious medical need, that claim should be dismissed.

### 2.    *Dr. Ward*

Mahon alleges that Dr. Ward acted with deliberate indifference in February 2017 by ignoring Dr. Robinson's recommendation that Mahon be seen by a neurologist. According to Mahon's complaint, however, Dr. Robinson found that Mahon's eye exam was within normal limits with respect to both eyes. (Doc. 1 at ¶ 89). Additionally, Robinson stated that he suspected that Mahon was malingering. (*Id.* at ¶ 90). In light of these allegations, Mahon has failed to state a claim of deliberated indifference based on Dr. Ward's failure to refer Mahon to a neurologist. *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *accord Lamb v.*

*Norwood*, 899 F.3d 1159, 1163 (10th Cir. 2018) (holding that "disagreement alone" does not constitute deliberate indifference).

Mahon also asserts that Ward was deliberately indifferent when he failed to send Mahon to outside medical providers, such as Dr. Beggs the plastic surgeon that performed the facial surgery on Mahon in 2016.  In support, Mahon alleges that on some unspecified date his wife scheduled an appointment with Dr. Beggs on "Monday at 10:35." (Doc. 1 at ¶ 107). Mahon does not allege, however, that Dr. Ward knew about this appointment, nor does Mahon allege how Dr. Ward would have known about this appointment. Indeed, Mahon does not even allege (1) the date of the alleged appointment, (2) how the information was communicated to Jail staff, and (3) to whom this information was communicated. Deliberate indifference requires subjective knowledge. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). It appears that Mahon attempts to impute Moore's purported knowledge to Dr. Ward. Mahon alleges that Moore was aware "that Mrs. Mahon had scheduled appointments for Mahon with outside medical providers. Administrator Moore advised both Mahon and his wife that appointments with outside medical providers must be coordinated through the Jail's medical department." (*Id.* at ¶¶ 108-09). An allegation that Moore had knowledge, however, is not the equivalent of, and falls short of, an allegation that Dr. Ward had the same knowledge.

Additionally, Mahon discussed with Moore his need for medical treatment in May and June 2017. Moore purportedly told Mahon to access sick call, but Mahon does not allege that he ever contacted the Jail's medical department on these occasions. Mahon's reliance on Moore's alleged awareness that Mahon requested surgery is insufficient to show that Dr. Ward had knowledge or was aware of Mahon's medical needs. The inquiry regarding deliberate indifference is specific as to each defendant, and the court must focus on what each defendant knew. *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). In other words, "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." *Id.*

Mahon's remaining allegations against Dr. Ward are that he saw Mahon on April 23, 2017, one day after Mahon filed a sick-call request stating that his teeth in his upper left jaw needed removal and that Mahon required eye surgery. (Doc. 1 at 15 ¶¶ 111-16). Mahon alleges that Dr. Ward failed to review Mahon's medical file to evaluate whether Mahon needed surgery. Mahon contends that this constitutes deliberate indifference, but beyond one merely conclusory allegation, he does not sufficiently allege that Dr. Ward had the requisite state of mind to constitute deliberate indifference. For example, he does not allege what information was contained in his medical file that would have caused Dr. Ward to conclude that

Mahon required surgery, and that failure to obtain that surgery promptly was deliberate indifference to a serious medical need.

Also, a mere failure to read a patient's medical file may constitute negligence, or perhaps gross negligence in some cases, but it does not entail the subjective knowledge required for deliberate indifference. *Johnson v. Chau*, No. 216CV1536JAMKJNP, 2019 WL 7037654, at *9 (E.D. Cal. Dec. 20, 2019), <u>report and recommendation adopted,</u> No. 216CV1536JAMKJNP, 2020 WL 2193338 (E.D. Cal. May 6, 2020) (holding that "the failure to review medical records may constitute negligence, but does not rise to deliberate indifference."); *Perez v. Wexford Health Sources, Inc.*, No. 1:17 C 8386, 2019 WL 5788073, at *6 (N.D. Ill. Nov. 6, 2019); *Green v. Wexford Health Sources*, No. 12 C 50130, 2016 WL 1214825, at *11 (N.D. Ill. Mar. 29, 2016) ("At *most*, [defendant's] failure to review [plaintiff's] full medical records and diagnose . . . was negligence.") (emphasis added); *see also Pryor v. Pat*, No. 9 C 472, 2010 WL 4483467, at *4-5 (N.D. Ind. Nov. 1, 2010) (failure to review medical records to determine allergies after plaintiff told defendant he was allergic to some types of antibiotics was not deliberate indifference); *Norris v. Lynch*, No. 07–0907, 2009 WL 745360, at *7 n.5 (M.D. Pa. March 18, 2009) (holding that physician's negligent failure to review medical records does not rise to the level of "deliberate indifference" without evidence of some more culpable state of mind); *Harris v. Clarke*, No. 06-C-0230, 2008 WL 4866683, at *31 (E.D. Wis. Nov. 10,

2008) ("Even if the records were available to [Defendant] . . . and he did not review them . . . [Defendant] may have been negligent, but more than negligence is required."). Mahon's allegations, therefore, do not indicate that Dr. Ward's failure to review Mahon's medical file was anything beyond mere negligence.

Accordingly, Mahon also has failed to state a claim against Dr. Ward for deliberate indifference to a serious medical need.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. Defendants' motion to dismiss (Doc. 16) be **GRANTED**.

2. Plaintiff's claims against Dr. Contini and Dr. Ward be **DISMISSED** with prejudice.

At Panama City, Florida, this <u>23rd</u> day of February, 2021.

/s/ *Michael J. Frank*

**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and**

recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636. The parties also are advised that if they dispute the accuracy of any facts taken from judicially-noticed documents, or if they otherwise wish to be heard on the propriety of the court taking judicial notice of those facts, they must raise this issue in an objection to this report and recommendation.